**STATE of Missouri, Respondent,**

v.

**James L. HALL, Appellant.**

**No. 61796.**

Supreme Court of Missouri,
Division One.

March 9, 1981.
Rehearing Denied April 6, 1981.

Gary L. Gardner, Asst. Public Defender, Kansas City, for appellant.

Nancy D. Kelley, Asst. Atty. Gen., Jefferson City, for respondent.

WELBORN, Commissioner.

Appeal from the Circuit Court of Jackson County where a jury found James L. Hall guilty of capital murder and he was sentenced to life imprisonment without probation or parole for fifty years.

On April 25, 1978, Gayetta Mazzeri and James Miller resided in Kansas City at 7500 South Park in a home owned by Gayetta and her husband, Joe. Joe, who was then incarcerated in the penitentiary, had invited Miller to reside in an upstairs room while he was in the penitentiary. That evening Miller and Larry Barnes returned from a fishing trip and Miller, Barnes and Gayetta cleaned and cooked the fish, drank beer, smoked marijuana and watched television. A man whom Miller and Gayetta knew as "Paco" and whom they identified at trial as James Hall, knocked at the door, was allowed to enter, and joined the others around the television. There was conversation about Joe being imprisoned and about a gun Hall wanted to sell for $50 which he took out of his pocket and showed around and then returned to his pocket. Some ten to forty minutes later Gayetta and Miller heard the sound of a gun shot and saw that Barnes, still sitting on the couch, had been shot and that Hall was holding a gun on Miller. Hall ordered Miller to the bedroom, told Gayetta to undress and threatened to kill her, hit Miller on the back of the head with the gun, took a knife from his pocket and began slashing and stabbing Miller. Miller fought back and during the fight Gayetta escaped to a neighbor's and phoned the police. Miller too ran to a neighbor's. While in the bedroom Gayetta had asked Hall why he shot Barnes. Hall's reply was, according to Miller, "Because Larry burned a buddy of mine for $10,000," or, according to Gayetta, "Larry _____ a friend of mine, and they paid me $10,000 to do that."

At trial letters dated before April 25 from Joe to Gayetta, and which Joe testified he had written, were introduced. In these letters Joe threatened to kill Miller if Gayetta had anything to do with him and he stated that he heard from a little bird that she was having sexual relations with Miller. On April 25, Miller was not aware of these letters. Later another letter was shown Miller in which Joe had written in a postscript "Tell Jimmy I'm sorry Paco didn't get him, but I will." Joe testified that he had had no contact with Hall since he had been incarcerated.

At trial the defense testimony came primarily from police officers who testified that Hall told them that, on April 25, he went to several bars and spent the night at a girl friend's house whose address and location he had forgotten.

Appellant's first point is an allegation of error on the part of the trial court in failing to sustain his challenge for cause of venire person Patsy Pruitt.

Voir dire by the prosecutor revealed that Mrs. Pruitt had worked for four years as a secretary in the police department. That employment had terminated two years prior to the trial. She had, of course, come into contact with police officers in that job.

"MR. GNEFKOW (Prosecutor): Would there be anything about that experience that would not—that would not enable you to sit as a fair and impartial juror in this case?

"VENIREMAN PRUITT: No, sir.

"MR. GNEFKOW: Being that you have dealt with police officers for a period of time, would you give more weight or less weight to their testimony than you would any other person?

"VENIREMAN PRUITT: Less weight?

"MR. GNEFKOW: I didn't mean it to sound like a multiple choice. Would you give the same weight to a police officer's testimony as you would to any other person?

"VENIREMAN PRUITT: Yes."

In response to a question by defense counsel in voir dire, Mrs. Pruitt stated that her husband was a police department detective, in the Crimes Against Property Unit.

"MR. JOHNSON: Do you ever have an occasion to talk to him about his work?

"VENIREMAN PRUITT: Very seldom.

"MR. JOHNSON: And I believe that you said that you at one time were engaged in police work, is that correct?

"VENIREMAN PRUITT: Right.

"MR. JOHNSON: The critical question then is do you think that that would affect your ability to judge the evidence in this case, particularly the evidence that comes from police witnesses? Do you think you would tend to be biased in any way?

"VENIREMAN PRUITT: No.

"MR. JOHNSON: Do you think you could be completely fair and impartial?

"VENIREMAN PRUITT: Yes.

"MR. JOHNSON: Thank you."

Appellant's challenge to Mrs. Pruitt went as follows:

"MR. JOHNSON: Your Honor, I'm going to challenge Patsy R. Pruitt for cause. I will readily admit to you that she says and says and says that she could not be impartial—or that she could be fair and impartial despite the fact that she has worked as a police officer and her husband has been a police officer for a number of years. I—

"MR. HALL: She was a secretary, not a police officer.

"THE COURT: Yes, she was a secretary.

"MR. GNEFKOW: She also said she would give less credence to a police officer over anybody else.

"MR. STERLING: She was repeating your question.

"THE COURT: Mark, I don't see any reason why I should when she answered that she could be fair.

"MR. JOHNSON: I don't disagree, Your Honor. I am still making the challenge.

"THE COURT: All right.

"MR. JOHNSON: I don't—I just agree that's what she said. My argument would be and the argument I make to you is that I simply don't think from the circumstances which were elicited in questioning that that comment is one that can be believed. I don't know how she could possibly be—

"THE COURT: How could we know that?

"MR. JOHNSON: —non-prejudiced, looking at the totality of the circumstances.

"THE COURT: These people are testifying under oath out here, and I think we are stuck with their testimony.

"MR. JOHNSON: I'm not saying that she doesn't believe that she can be fair.

"THE COURT: I know what you mean. I think under the circumstances—

"MR. JOHNSON: I mean I'm not saying she is perjuring herself.

"THE COURT: I know. You're saying subconsciously she leans—

"MR. JOHNSON: I don't see how she could possibly be fair.

"THE COURT: Not unless the State agrees to it.

"MR. GNEFKOW: The State doesn't agree, Your Honor.

"THE COURT: Okay."

Appellant's point states that the trial court erred in failing to exercise its discretion and make an independent factual determination of Pruitt's fairness and impartiality "in that the trial court, though real-

izing that she subconsciously gave more weight to the testimony of police officers than other witnesses, felt bound by her testimony that she could be fair and impartial."

■ Appellant is thus attempting to bring this case into the area for application of the holdings in cases such as *State v. Land,* 478 S.W.2d 290 (Mo.1972), and *State v. Holliman,* 529 S.W.2d 932 (Mo.App.1975), in which the trial court made a finding or expressed an opinion adverse to a venire person's ability to perform impartially, but, nevertheless, accepted the juror's own contrary appraisal of his ability to do so. That is not the posture of this case. The trial court's statement "You're saying she subconsciously leans * * *" was only a recognition of the argument of defense counsel, not a statement that the court agreed with counsel's contention.

■ The trial court may have placed too much reliance upon Mrs. Pruitt's responses rather than making its own independent judgment of her qualifications. However, such failure on the part of the trial court is not fatal to the conclusion reached by it. It merely means that an appellate court, in reviewing the trial court's action, will " * * * subject the qualifications of the challenged juror in the present case to a searching consideration." *State v. Holliman,* 529 S.W.2d 932, 940[12].

■ In this case, contrary to the situation in cases relied upon by appellant, such as *Land, Holliman, State v. Lovell,* 506 S.W.2d 441, 442–444[4] (Mo. banc 1974); *State v. Thompson,* 541 S.W.2d 16, 17[1, 2] (Mo.App.1976); *State v. Gordon,* 543 S.W.2d 553, 555[4] (Mo.App.1976), and *State v. Carter,* 544 S.W.2d 334, 337[1–4] (Mo.App.1976), Mrs. Pruitt did not respond equivocally or ambiguously to questions directed at her impartiality. On this record, there is only the fact that she had formerly been employed by the police department as a secretary and the fact that her husband was a police department detective. Such facts, standing alone, are not grounds for challenge for cause. *State v. Robinson,* 595 S.W.2d 9, 11[1–3] (Mo.App.1979); *State v. Wraggs,* 512 S.W.2d 257 (Mo.App.1974).

No basis for a finding of error on the part of the trial court has been demonstrated.

■ In his second point, appellant asserts his right to relief under the plain error rule for the trial court's failure, in the absence of objection, to correct the prosecutor's closing argument in which, appellant contends, the prosecutor improperly defined reasonable doubt.

The argument involved the following statement by the prosecutor:

"When we started Monday and there were eighty some of you, and we talked in voir dire, and I asked if any of you knew anything about this case from any source, anything, and nobody or very few people did, and now you've heard all the evidence and you've heard all the arguments, and now you know—occasionally juries say, 'We know he did it but you didn't prove it.' Ladies and gentlemen, you didn't know before. If you go upstairs and say, 'We know he did it, we know he's guilty of capital murder,' the State has proved it."

In this case the prosecutor's opening argument repeatedly acknowledged the state's burden of proof beyond a reasonable doubt. The defense argument was aimed at creating reasonable doubt in the jurors' minds and likewise repeatedly referred to the state's burden. Such a brief passing remark of the prosecutor on closing argument, not pointedly directed at defining reasonable doubt, could not have misled the jury or have produced manifest injustice or a miscarriage of justice, and affords no basis for relief as plain error. *State v. Burnfin,* 606 S.W.2d 629, 630–631[4][5] (Mo. 1980).

Judgment affirmed.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the court.

All of the Judges concur.