**STATE of Missouri, Plaintiff-Respondent,**

v.

**Darryl MERRITT, Defendant-Appellant.**

No. 51431.

Missouri Court of Appeals,
Eastern District,
Division Four.

July 21, 1987.

Motion for Rehearing and/or Transfer Denied Aug. 27, 1987.

Application to Transfer Denied Oct. 13, 1987.

David C. Hemingway, Public Defender, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Colly Frissell-Durley, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

STEPHAN, Judge.

Darryl Merritt and his twin brother, Derrick, were jointly tried and convicted of first degree murder, § 565.020.1, RSMo, Cum.Supp.1984, for the shooting death of Ronald Butler, Jr. Both received life sentences. Derrick Merritt's conviction has been affirmed by this Court. *State v. Merritt*, 734 S.W.2d 926 (Mo.App.1987). This is Darryl Merritt's appeal.

On February 15, 1985, Ronald Butler, Jr., stopped at an Amoco station and purchased gasoline from Derrick Merritt. Shortly afterwards, he realized he had not received change and returned to the station to ask about it. Derrick Merritt refused to pay him.

Butler, Jr., went to his father's shoe shine and repair shop and told his father, Ronald Butler, Sr., what had occurred. Butler, Sr., and a friend went to the station and asked Derrick for fifteen dollars change. The three men argued until the service station manager intervened and told Butler, Sr., to return between 6:00 and 6:30 p.m. when they closed the cash register. Butler, Sr., returned at 6:15 p.m. but was refused a refund.

Approximately an hour later, Derrick and his two brothers, Darryl and Marcus, went to Butler's shoe shine parlor where another heated argument ensued. The Merritts eventually left the shop.

According to Butler, Sr., the Merritt twins returned to Butler's shop at approximately 7:30, looked around, and then left. A half hour later, they returned to the shop, allegedly to give Butler, Jr., his change. After counting out thirteen dollars on the counter, defendant and his brother pulled out guns and shot Butler, Jr. Butler, Sr., testified that his son was shot when he reached for Derrick's gun.

Defendant and his brother, on the other hand, both testified that the Butlers drew guns first. According to Derrick Merritt, Butler, Jr., was shot while Derrick was wrestling the gun from his hand.

Defendant and his brother were later arrested at their home. The police discovered a gun in a tire located in defendant's yard. The gun was later identified as the murder weapon.

In his first point on appeal, defendant asserts the trial court erred when it denied his motion to strike for cause venireman Ehrhard who stated on voir dire that he would refuse to consider any punishment other than death if defendant were found guilty of premeditated murder. After the trial court denied defendant's motion to strike Ehrhard for cause, defendant challenged Ehrhard peremptorily. He now invokes the rule that "an accused must be afforded a full panel of qualified jurors before he is required to expend his peremptory challenges ..." *State v. Hopkins*, 687 S.W.2d 188, 190 (Mo. banc 1985).

During voir dire the following exchange occurred:

[MS. FOX (Codefendant's counsel):] Do you have any opinions on the death penalty?

VENIREMAN EHRHARD: I don't oppose the death penalty.

Q Have you held that opinion before today?

A I have.

Q Have you ever held an opinion different from that?

A We've got to back up. When you were asking us before about a premeditated murder, I do not oppose the death penalty on premeditated murder.

\* \* \* \* \* \*

Q You will not be asked as a juror to consider the question of whether or not to impose the death penalty unless the jury unanimously finds that it's a premeditated murder.

A Right.

Q Now, if the jury unanimously finds it's a premeditated murder, do you then think the death penalty is the only appropriate punishment for that crime?

A Yes, on premeditated murder, yes.

Q You don't think life imprisonment would be an appropriate punishment?

A No.

Q You wouldn't be able to consider life imprisonment if you found them guilty of premeditated murder?

A No.

Though Ehrhard's responses evidenced a predilection for the death penalty in cases of premeditated murder, we must examine the whole record to determine whether Ehrhard, as defendant claims, would have been unwilling or unable to follow the law. We think the following exchange between the prosecuting attorney, Mr. Randall, and Ehrhard refutes defendant's claim:

Mr. Randall: Mr. Ehrhard, I want to ask you a couple more questions. I don't mean to pick on you. Defense counsel asked you at one point if it's proven beyond a reasonable doubt that this is premeditated murder, would you think then the only applicable punishment would be the death sentence. The question was something in that range, and you said, "Yes." Do you understand that the premeditation required for this to be Murder in the First Degree can be for any length of time, no matter how brief. Can you imagine a set of circumstances where it's a premeditated murder and the defendants are found guilty of premeditated murder, Murder in the First Degree, but because of the circumstances, any circumstances you could imagine, you would think that they should be sentenced to life imprisonment instead of death? Could there be any mitigating circumstances about anything that you could imagine that could be presented to you?

A: In certain cases.

Q: That could cause you to say in some circumstances life imprisonment could be more appropriate than death?

A: There could be just a possibility, yes.

■ The trial court has wide discretion in determining the qualifications of a veniremen, and its decision will not be disturbed absent a clear showing of abuse and a real possibility of injury to the complaining party. *State v. Young*, 701 S.W.2d

429, 432 (Mo. banc 1985). Because the trial judge is better positioned to determine a venireman's willingness to impartially follow the law, doubts as to the trial court's finding will be resolved in its favor. *State v. Engleman,* 634 S.W.2d 466, 472 (Mo. 1982).

■ In *State v. Smith,* 649 S.W.2d 417 (Mo. banc 1983), the Missouri Supreme Court found that the trial court did not abuse its discretion in denying defendant's motion to strike a venireman who ambiguously expressed a preference for imposing the death penalty in capital cases. The court reasoned that on the basis of the entire examination and giving due regard to the trial court's opportunity to view the demeanor of the venireman, it was reasonable to infer that the venireman would follow the court's instructions. *Id.* at 425–427. As in *Smith,* venireman Ehrhard's statements in response to the prosecutor's rehabilitative questioning could well be interpreted as an expression of the venireman's belief that evidence of mitigating circumstances would cause a sentence of life imprisonment to be "more appropriate" than a death sentence. Similarly, the trial court would have been justified in inferring a willingness on the venireman's part to follow the court's instructions on the subject.

In light of the prosecutor's successful rehabilitation of venireman Ehrhard, we find that the trial court's denial of appellant's motion to strike him for cause was neither an abuse of discretion nor prejudicial error. Point denied.

■ In his second point, defendant asserts the trial court erred in refusing to submit his offered voluntary manslaughter instruction. The jury was instructed on first degree murder and second degree murder. Defendant argues, however, that an instruction on manslaughter was warranted because the evidence showed he acted under the influence of sudden passion when he killed Butler, Jr.

In *State v. Powell,* 728 S.W.2d 622 (Mo. App.1987), this Court held that where the jury was instructed on first and second degree murder, and found defendant guilty of first degree murder, any alleged error in refusing to instruct on manslaughter was harmless. As the court in *Powell* pointed out: "The jury ... found that the evidence supported a finding of deliberation and convicted [defendant] of first degree murder; not second degree murder. It is therefore not necessary to decide whether evidence existed to support a manslaughter instruction." *Id.* at 625. *Powell* is dispositive of the issue defendant raises. The point is denied.

■ To establish that defendant and his brother knowingly and deliberately shot at the Butlers, the State offered the testimony of Kermit Johnson, to the effect that shortly after the shooting in the shoe shine parlor, a man dressed like defendant shot at Johnson as Johnson was getting into his car, which had been parked a few doors away. Though defendant admitted at trial that he shot at Johnson's car because he believed the driver to be Ronald Butler, Sr., he now objects Kermit Johnson's testimony was inadmissible evidence of other crimes.

Derrick Merritt raised the same point in his appeal. It was rejected after thorough discussion on grounds that the challenged testimony was admissible on the issue of intent. *State v. Merritt,* supra, 734 S.W.2d 926, 932–934 (Mo.App.1987).

We might also add that another exception to the exclusionary rule concerning other crimes permits the state to complete the story of the crime by proving up the immediately attendant circumstances. *State v. Harden,* 639 S.W.2d 90, 93 (Mo. App.1982), *cert. denied,* 463 U.S. 1229, 103 S.Ct. 3570, 77 L.Ed.2d 1411 (1983). This Court has noted that such an "exception" arises,

"where the different crimes are so linked together that proof of one also involves proving the other. In such a situation evidence of the act constitutes a part of the res gestae and is admissible. To be a part of the res gestae the act must be substantially contemporaneous with the commission of the crime. It must occur in the same transaction as the crime, or the circumstances must indicate it is part of one continuous transaction in the accomplishment of a common design.

*State v. Nylon,* 563 S.W.2d 540, 542 (Mo. App.1978). (Citations omitted).

The conditions set forth in *Nylon* were met here as they were in *State v. Winston,*

657 S.W.2d 399, 401 (Mo.App.1983) where it was held that testimony concerning shots fired at the victim of a robbery by the escaping defendant was admissible as part of the res gestae.

The assault on Mr. Johnson was substantially contemporaneous to the gun fight in Butler, Sr.'s shoe shop. The Johnson shooting incident also occurred in the immediate vicinity of the shoe parlor. The trial court could reasonably have determined that the shots fired at Johnson were part of a continuing transaction between the Merritts and the Butlers.

We find no abuse of discretion in the trial court's decision to admit the testimony relating to the shots fired at Johnson. Defendant's third point is denied.

■ In his fourth point, defendant asserts the trial court erred when it excused veniremen from the jury panel who, though they voiced opposition to the death penalty, nevertheless affirmed they could properly decide the question of guilt. Defendant argues that the exclusion of these persons because of their negative views concerning the death penalty deprived him of a fair cross section of the community from which to select a jury to decide the issue of guilt. Defendant claims that the trial court should have allowed the persons in question to remain on the venire panel and later, if the defendant was found guilty, empanel a "death qualified" jury for the sentencing phase of the trial. Because defendant did not receive the death penalty, however, the issue he raises is academic and we will not consider it. *State v. Thomas*, 625 S.W.2d 115, 127 (Mo.1981), *cert denied*, 459 U.S. 1114, 103 S.Ct. 747, 74 L.Ed.2d 966 (1983). Point denied.

In his final point, defendant contends the failure of the trial court to strike venireperson Kerlagon for cause *sua sponte* constitutes plain error. Kerlagon stated on voir dire that her husband was a police officer and she had worked in the city police department as a district clerk seven years before the trial. Although defendant did not challenge Mrs. Kerlagon for cause, he asserts that these combined factors disqualified her from jury service and that the

trial court should have excluded her on its own motion.

■ Plain error is one which affects the substantial rights of the defendant so that a manifest injustice or miscarriage of justice would result if not invoked. Rule 29.-12(b). In *State v. Hamm*, 710 S.W.2d 335, 336–337 (Mo.App.1986) it was held not to be plain error for the trial court to fail to exclude, sua sponte, a prospective juror whose son was the prosecuting attorney in another county. During voir dire, the venireman initially stated that the "defendant would have to put on a good case for him to find the defendant not guilty." In response to later questioning, however, he stated that he could be impartial, follow the instructions of the court, and indicated that he understood the defendant had no burden of proof. Defense counsel did not challenge the venireman for cause but used a peremptory challenge to remove him from the panel. Under the circumstances, this Court found no manifest injustice and, thus, no plain error.

■ Relationship of a venireperson to a police officer is not, in itself, basis for a challenge for cause. *State v. Hopkins*, 687 S.W.2d 188, 190 (Mo. banc 1985). Likewise, past employment with law enforcement, standing alone, is not ground for challenge for cause. In *State v. Hall*, 612 S.W.2d 782, 785 (Mo.1981), the Missouri Supreme Court held that a venireperson's former employment by the police department as a secretary and her marriage to a police department detective did not provide grounds for a challange for cause. *Id.* In *Hall*, the venireperson's employment with the police department terminated two years prior to the trial. *Id.* at 783. Here, venireperson Kerlagon's employment with the police ended seven years before the trial.

■ The questioning of venireperson Kerlagon demonstrates her ability to judge impartially the testimony of police officers. The following exchange refutes defendant's claim of Kerlagon's bias:

Q: I think you mentioned a few of the names you recognized. You knew the person from when you worked for the police department. You're going to hear a lot of police officers testify, that the

state will call, probably. Would you give a police officer more credibility, believe their testimony more, simply because they are a police officer?

A: No.

Q: Do you think that if you were selected to set on the jury that you would have difficulty going home and telling your husband that you returned a verdict of not guilty?

A: No.

Q: Has he inquired of you at all as to what's going on down here, what type of case you're on?

A: Yes, he has, but I've told him very little.

Q: That's fine.

In view of Kerlagon's unequivocal statements on voir dire we find the court's failure to strike her for cause *sua sponte* resulted in no manifest injustice or miscarriage of justice to defendant. The point is denied.

Judgment affirmed.

GARY M. GAERTNER, P.J., and SIMON, J., concur.