**STATE of Missouri, Respondent,**

v.

**Kevin BRADSHAW, Appellant.**

No. 54869.

Missouri Court of Appeals,
Eastern District,
Division Two.

Sept. 12, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 18, 1989.

Application to Transfer Denied
Dec. 12, 1989.

Henry B. Robertson, Asst. Public Defender, St. Louis, for appellant.

William L. Webster, Atty. Gen., and Daryl R. Hylton, Asst. Atty. Gen., Jefferson City, for respondent.

GRIMM, Presiding Judge.

In this jury-tried case, defendant appeals his convictions of the class A felony of first degree murder and the class B felony of first degree burglary, in violation of §§ 565.020.1 and 569.160, RSMo 1986. Defendant was sentenced to consecutive terms of life without eligibility for probation or parole and ten years' imprisonment. We affirm.

Defendant raises three points of error. First, the trial court erred in overruling defendant's motion to suppress a taped statement. This issue was not preserved for appellate review; further, no plain error resulted, because the evidence sufficiently established that defendant voluntarily accompanied officers to police headquarters. Second, the trial court erred in overruling defendant's motion for judgment of acquittal on the murder charge; because the State failed to make a submissible case of first degree murder. We disagree, because sufficient evidence was presented to support a finding of deliberation. Third, the trial court erred in excusing a venireperson who "said 'I think I could, yes,' when asked if she could return a verdict of guilty of murder in the first degree." This issue was not preserved; further, no plain error resulted, because the trial court properly exercised its discretion in removing the potential juror.

In mid-June, 1986, the victim's husband travelled from his St. Louis home to Las Vegas. The victim, age 73, did not accompany him. He telephoned and spoke to her from Las Vegas on Friday and Sunday, June 20 and 22.

The victim's husband returned to their home in the early morning of Thursday, June 26. He noticed the sun porch screen was pushed in, and the back door was standing open.

Inside, he found the victim dead. She was lying on her back on their bed with her head at the foot of the bed. A towel was around her neck and face; part of it was in her mouth. A pillow covered her face.

An autopsy established the cause of death as asphyxiation due to strangulation and smothering. The victim's face was bruised, and she had abrasions and bruises on her neck.

Her facial injuries were consistent with a towel having been stuffed in her mouth and a pillow having been placed over her face. Her neck injuries were consistent with the application of pressure by a hand or by a towel twisted around her neck with great force.

The victim's wedding ring and old silver coins were missing. There was a shoeprint on the headboard just above the mattress.

The police learned that defendant had spent old coins in video game machines at a neighborhood store. St. Louis City Police Officer Joseph Right first interviewed defendant on Friday, July 25, 1986. At that time, defendant denied involvement in the murder. Defendant stated, however, that he had recently purchased a gray hat from someone who said it had been taken during a burglary in the area. Defendant gave the hat to Officer Right. Defendant told Officer Right he would contact the police on Monday with the name of the person who had sold it to him.

Defendant failed to contact the police on Monday. After the victim's husband identified the hat as his, Officers Right and John Roussin located defendant at his mother's place of employment. They told defendant's mother that they needed to speak to defendant again. When defendant's mother brought him out, defendant was advised of his *Miranda* rights and driven to police headquarters for questioning.

At headquarters, defendant read, initialled, and signed a warning and waiver form. The officers then questioned defendant regarding discrepancies in his prior statements regarding the hat. Defendant replied that he was in the victim's house, but she appeared to be dead when he entered the bedroom.

When the officers told defendant they did not believe him, he changed his statement, and later recorded it on tape. In this statement, defendant said he entered the victim's house through a torn screen on the back porch. He took the gray hat from one bedroom and entered another bedroom.

There, he encountered the victim who had a towel around her neck. She asked what he was doing in her house. According to defendant, the victim then grabbed him, and they wrestled. Defendant said he "grabbed her by the throat" and "that slowed her down and I let her go and she charged at me again and started actin' up." Defendant then grabbed the victim, struck her in the face, and "threw her on to her bed." According to defendant, the victim at that time was breathing as "if she was tryin' to catch her breath."

Defendant said he then went through the victim's purse, taking a gold ring and money. He then went through the victim's closet where he found an umbrella and coins dating from 1930. Defendant said he heard the victim's breathing stop, so he gathered up these items and left.

Defendant told the officers that he spent the coins playing video games at a store near his house. He also told them that a friend had the umbrella, and his brother had the ring. Defendant accompanied the officers when they recovered the umbrella and ring from those individuals.

They also recovered the shoes defendant was wearing on the night of the murder. The soles of these shoes had a tread design similar to that of the shoeprint found on the headboard of the victim's bed.

■ In his first point, defendant contends that the trial court erred in overruling his motion to suppress the taped statement; because the statement "was involuntary within the meaning of the Fourth and Fifth Amendments in that [defendant] was detained and subjected to custodial interrogation without probable cause or his consent." In his new trial motion, however, defendant made no allegation that he was unconstitutionally seized. Thus, defendant's first point is not preserved for appellate review. *State v. Moesch*, 738 S.W.2d

585, 587 (Mo.App.E.D.1987). We will however, review the issue for plain error. Rule 29.12(b).

In support of his contention, defendant relies primarily on the holding in *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). There, the evidence showed that Dunaway was taken to the police station for questioning. Although Dunaway "was not told he was under arrest, he would have been physically restrained if he had attempted to leave." *Id.*, 442 U.S. at 203, 99 S.Ct. at 2252, 60 L.Ed.2d at 830. The *Dunaway* Court held that, absent probable cause, this constituted a seizure in violation of the Fourth and Fourteenth Amendments. *Id.*, 442 U.S. at 216, 99 S.Ct. at 2258, 60 L.Ed.2d at 838.

Here, however, defendant was not seized. "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497, 509 (1980); *Michigan v. Chesternut*, 486 U.S. 567, 108 S.Ct. 1975, 1979, 100 L.Ed.2d 565, 571–572 (1988).

In the present case, Officer Right was the sole witness at the suppression hearing. He testified that he first interviewed defendant on Friday, July 25. Upon the officer's request, defendant voluntarily accompanied him to headquarters so they could talk. Officer Right testified that defendant could have refused to go with him. After defendant was advised of his *Miranda* rights, he told the officer about the gray hat. Following the interview, Officer Right took defendant back to his home.

On the following Monday, Officers Right and Roussin went to defendant's mother's place of employment to see defendant. Officer Roussin told defendant's mother that defendant was not under arrest and that they wanted to speak with him to clarify certain matters. Defendant was not handcuffed, and there is no evidence that he was searched or restrained in any way. Defendant was taken to police head-

quarters. There was no evidence, however, that at any time, defendant expressed a desire to leave or that he was denied permission to do so.

Defendant contends that the fact the officers gave him a *Miranda* warning prior to questioning him "emphasized that this was custodial interrogation." The evidence, however, supports a finding that, in view of all the circumstances, a reasonable person would have believed he was free to leave. Thus, the police did not seize defendant prior to the making of the taped statement. *See State v. Sherrard*, 659 S.W.2d 582 (Mo.App.E.D.1983); *State v. Spivey*, 710 S.W.2d 295 (Mo.App.E.D.1986); *State v. Hicks*, 755 S.W.2d 242 (Mo.App.W.D. 1988). Accordingly, we find no plain error; point denied.

In his second point, defendant asserts that the trial court erred in overruling his motion for judgment of acquittal on the first degree murder charge; because the State failed to make a submissible case on the element of deliberation. Relying on the evidence most favorable to his position, defendant asserts that "[t]he evidence shows only a sudden confrontation, with no 'cooling off period' during which [defendant] could be said to have formed the necessary state of mind."

In reviewing this point, however, "the evidence, together with all reasonable inferences to be drawn therefrom, is viewed in the light most favorable to the verdict and evidence and inferences contrary to the verdict are ignored." *State v. Mallett*, 732 S.W.2d 527, 530 (Mo. banc 1987). "We do not weigh the evidence but determine whether the evidence was sufficient for reasonable persons to have found defendant guilty as charged." *State v. White*, 736 S.W.2d 499, 500 (Mo.App.E.D.1987).

Section 565.020.1 provides that a person commits first degree murder, "if he knowingly causes the death of another person after deliberation upon the matter." Section 565.002(3), RSMo 1986, defines "Deliberation" as "cool reflection for any length of time no matter how brief." "Direct evidence of deliberation is not necessary to support a [first degree murder] conviction;

it is sufficient that deliberation is reasonably inferred from the circumstances surrounding the murder." *State v. Antwine*, 743 S.W.2d 51, 72 (Mo. banc 1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988).

When viewed in the light most favorable to the verdict, the evidence shows that defendant was 17 years old, while the victim was 73 years old and weighed 94 pounds. The victim was strangled manually or by a towel twisted around her neck. Additionally, she was smothered by part of a towel stuffed into her mouth and a pillow placed over her face. Her death was attributed to both the strangulation and smothering. The jury could have reasonably found that the strangulation and smothering did not occur simultaneously.

This was sufficient evidence from which reasonable persons could have found that defendant coolly reflected "for any length of time no matter how brief." § 565.002(3); *see State v. Sturdivan*, 497 S.W.2d 139, 142 (Mo.Div. 1 1973); *State v. Dickson*, 691 S.W.2d 334, 339 (Mo.App.E.D. 1985). Point denied.

In his final point, defendant contends the trial court erred in removing a venireperson from the jury panel. The record before us does not show that defendant objected when the venireperson was removed or that a timely motion was made to quash the panel. Thus, defendant did not preserve this allegation of error for appellate review. *State v. Mitchell*, 611 S.W.2d 223, 228 (Mo. banc 1981). We will, however, review the point for plain error.

"The trial court has broad discretion in determining the qualifications of a venireperson." *State v. Hudson*, 736 S.W.2d 56, 57 (Mo.App.E.D.1987). Further, "the trial judge is better positioned to determine a [venireperson's] willingness to impartially follow the law...." *State v. Merritt*, 735 S.W.2d 399, 402 (Mo.App.E.D.1987).

During voir dire, this venireperson and four others, said they could not consider life imprisonment without probation or parole as punishment for the murder charge. After further questioning by counsel, the

trial judge removed these five from the panel. Defendant's point, however, relates solely to the removal of the one venireperson.

Defense counsel conducted the following examination of her:

Q: And, again, it would be that you're reluctant to impose a sentence of life in prison without the possibility of probation and parole, is that correct?

A: Yes.

Q: Do you think, ma'am, that even though you would be reluctant to impose that kind of punishment that if you were selected as a juror and would listen to the evidence that the State would present to you and you would find the elements—you would find that they have proven to you beyond a reasonable doubt murder in the first degree would you—because of your opposition to the punishment could you still find him guilty?

A: *I think I could, yes, but I would have—I was on a criminal case once before and I didn't like the way it operated and I have my doubts about this as well.*

\* \* \* \* \* \*

Q: The problem wasn't with the punishment in that case, if I understand you?

A: No, it was also. I found it very, very difficult to sentence the young man to the length of time that we did.

Q: Do you think, ma'am, that you could separate out whatever happened in the last trial and judge this case independently just based on what you would hear in this case?

A: *I might, but I would still have trouble sentencing him to life in prison, I know that.*

(emphasis added).

The venireperson's responses were equivocal. From these responses, the trial judge could reasonably have found that she would be unable to separate her feelings about life imprisonment from her duty to determine defendant's guilt or innocence. As such, the trial judge could reasonably have concluded that the venireperson would be unable to follow the court's instructions. "A potential juror must be freely able to follow the law as declared by the trial court." *State v. Webb*, 725 S.W.2d 901, 902–903 (Mo.App.E.D.1987).

Therefore, in light of our limited scope of review and the trial court's broad discretion, we find no error, plain or otherwise. Point denied.

The judgment and sentence are affirmed.

KAROHL and GARY M. GAERTNER, JJ., concur.