## THE STATE v. WILLIAM DUDLEY, Appellant.

### Division Two, July 5, 1912.

1. **INFORMATION: Larceny of Two Articles: Charging Value.** The fact that an information charges the larceny of two separate articles without stating the value of each does not invalidate the information when the aggregate value is stated.

2. **JURORS: Qualifications: Conversation with Prosecuting Witness.** A juror is not incompetent because he has talked with the prosecuting witness about the arrest of the defendant but has heard none of the facts as to his guilt or innocence, and has formed no opinion.

3. **REMARKS OF COUNSEL: Forfeiting Bond: No Exception.** The statement by the prosecuting attorney, in a prosecution for larceny, that defendant had forfeited his bond and that a requisition had been issued for him, is not error warranting reversal, where the defendant's objection to the statement was sustained and the jury instructed to disregard it, and there was no exception.

4. **EVIDENCE: Criminal Law: Cross-Examination.** Where defendant testified that he bought the buggy which he is charged with having stolen, while traveling on the road, cross-examination as to the kind of horses he was driving on this same journey and how they were shod, is proper.

5. **INSTRUCTIONS: Criminal Law: Reasonable Doubt.** In a prosecution for grand larceny, an instruction upon reasonable doubt is full and clear which tells the jury in effect that the burden rests upon the State, etc., "but a doubt to authorize an acquittal on that ground alone should be a reasonable doubt and one fairly arising from the evidence considered as a whole; the mere possibility that the defendant may be innocent will not warrant you in acquitting him on the ground of reasonable doubt."

245 Mo.—12

6. ———: ———: **Presumption of Innocence.** In a prosecution for grand larceny the instruction asked by the defendant on the presumption of innocence should have been given, but, where the jury was fully instructed on reasonable doubt, such refusal was not error requiring reversal.

Appeal from Dunklin Circuit Court.—*Hon. W. S. C. Walker,* Judge.

AFFIRMED.

*W. G. Bray* and *C. P. Hawkins* for appellant.

(1) The information is bad for the reason that it charges defendant with wrongfully taking a buggy and also set of harness, distinct and separate articles, without stating the value of each, but states the collective value. State v. Koplan, 167 Mo. 298; State v. Ravencraft, 62 Mo. App. 109. (2) The court erred in refusing to excuse the juror, who had talked with the prosecuting witness. State v. Tomasitz, 144 Mo. 86. (3) The court erred in permitting the prosecuting attorney, in his opening statement to the jury, to state that the defendant, at the last term of court, forfeited his recognizance, and that a requisition had been issued for him. State v. Armstrong, 167 Mo. 257. (4) The court erred in allowing the prosecuting attorney, over defendant's objections to cross-examine the defendant about matters not brought out in his direct examination. R. S. 1909, Sec. 5242; State v. McGraw, 74 Mo. 573; State v. Porter, 75 Mo. 171; State v. Troutt, 36 Mo. App. 29; State v. Grant, 144 Mo. 56; State v. Hawthorn, 166 Mo. 229; State v. Kyle, 177 Mo. 569; State v. Fullerton, 90 Mo. App. 411; State v. Bell, 212 Mo. 111.

*Elliott W. Major,* Attorney-General, and *Campbell Cummings,* Assistant Attorney-General, for the State.

(1)   The information charges grand larceny of a
buggy and harness of the aggregate value of one hun-
dred dollars, the personal property of the prosecuting
witness, which appellant did feloniously steal, take and
carry away.   The information is sufficient and fully
charges but one offense.   R. S. 1909, Sec. 4535.   It is
a proper allegation of the value of the property stolen.
State v. Koplan, 167 Mo. 298; State v. O'Connell, 144
Mo. 387; State v. Wagner, 118 Mo. 626.   (2) Appel-
lant objected to Juror Redman because he held an
unimportant conversation with the prosecuting wit-
ness relative to effecting the arrest of appellant.   The
juror stated no facts in the case were detailed to him
at the time, and that he had no opinion of the guilt or
innocence of appellant, and that he had never thought
anything more about it.   Appellant has failed to cite
any cases holding that the acceptance of such a juror
was error, and we submit none such can be found.
Moreover, such ground is not in the motion for new
trial, nor is the juror's name set out therein.   State
v. Tomasitz, 144 Mo. 86; State v. Shipley, 171 Mo.
551.   (3) Appellant complains of statement of prose-
cuting attorney that appellant forfeited his bond, and
that a requisition was issued.   The argument or state-
ments, of the prosecuting attorney are not set out in
the bill of exceptions, but only appellant's objection
thereto and the court's ruling thereon.   Still, as the
court sustained the objections and instructed the jury
to disregard them, and no request for a reprimand
was made, and no exceptions taken to the insufficiency
of the instructions given to the jury, or to the court's
ruling on appellant's objections, and, in short, that no
exception whatsoever was saved, the alleged error is
not now available, as the trial court cannot be con-
victed of error for having done all that appellant asked.
State v. Kullman, 225 Mo. 625; State v. Chenault, 212
Mo. 132; State v. Murphy, 201 Mo. 691; State v. Mc-

Mullin, 170 Mo. 608; State v. Armstrong, 167 Mo. 257.

ROY, C.—Defendant was convicted of grand larceny in the circuit court of Dunklin county, and sentenced to two years in the penitentiary, and has appealed.

The information charged him with the larceny of "one buggy and one set of leather harness, both of the value of one hundred dollars," on October 8, 1910. He was living on a farm near Senath, in Dunklin county. His father lived near Manila, Arkansas, about sixteen miles south of Senath.

The defendant had purchased eighty acres of unimproved land covered with timber and brush near his father's, and had cleared away a place to build a house. He had bought lumber in Senath and hauled it in a wagon to his farm. He made a trip with a load of lumber leaving Senath about eight o'clock on Saturday night, October 8, 1910, and passed by the buggy shed of Ben Vardell, which was on the side of the road about an eighth of a mile from Vardell's house. The evidence tended to show that there were tracks of horses, similar to the tracks of defendant's horses, in front of the buggy shed the next morning, and tending to show that defendant's team had stopped there and that the buggy tracks indicated that it had been tied behind the wagon, and the tracks were such as to show that the buggy had in that way been taken to defendant's place in Arkansas. It was found in his possession about sixty rods from the public road behind some bushes. Vardell's harness was in the buggy. The collar was missing.

The defendant testified: That he did not take prosecuting witness's buggy, but that on the Sunday morning (October 9, 1910), at the State line, or about a mile and a half beyond, he had bought it from a man named Carter whom he met about daylight, for

the sum of thirty-five dollars; that he had known Car-
ter off and on for three years, as his business was that
of trading horses.   He described Carter as a small
man with red hair.   On cross-examination appellant
testified that he had left his home at Senath on Satur-
day night about eight o'clock, going straight south,
passing the prosecuting witness's home and buggy
shed, making one continuous trip from the -time he
left home until he bought the buggy the next morning;
that the place where he bought the buggy was about
thirteen miles from his home, and that it took him
from eight o'clock the night before to travel from Se-
nath to one and three-quarter miles below the State
line; that his horses were between twelve and fourteen
hands high, were shod with calks ("corks") behind
and no toes; that he drove on from the place where he
bought the buggy to his place, where he unloaded the
lumber and came up to his father's, about nine or ten
or eleven o'clock a. m.; that it was some ten or twelve
miles from the place where he bought the buggy to the
place where he unloaded the lumber, four miles south
of Manila.   On being asked why he did not take the
buggy on down to where he unloaded the lumber, he
answered, because there were logs scattered around
there until he could not get the buggy out of the road,
and where he left the buggy it was cleared out and
convenient to get in; that it was an open place with
no bushes, although he could not explain why the men
could not see the buggy as they passed on the road
until he called their attention to it.   The place where
he left the buggy was about three miles from his fa-
ther's, and that he had not left it at his father's be-
cause there was no room there for it, although he had
stopped there on his way down.   He further testified
that Carter overtook him on the road; that he was
driving a team of light sorrels to this very buggy;
that when he sold him the buggy, he took them out, and
that he did not know there was any harness in the

buggy at the time; that Carter did not say where he had gotten the buggy and that he paid him thirty-five dollars for it. He further testified that he had known Carter at Senath; that he had traded horses with him several times; that there was no one with him when he bought the buggy, and that he had never seen him since; that the last time he had seen him was the fall before that; did not know where Carter lived, and, when asked if anybody was traveling with him, he answered, "No, he seemed to be by himself." He further stated that he made no effort to find him. He also stated that nobody assisted him in placing the buggy where it was found.

The prosecuting witness testified that the defendant told him that he got the buggy up the road, and that when asked where it was, he said, "it was down the road a piece," and that defendant also said, "I am here among strangers and I would like for you to take the money and bring the buggy back providing it belongs to you."

Defendant, in his direct testimony, stated he bought the buggy on the State line, on Sunday morning, on the road where he was traveling from his house at Senath. On cross-examination he was asked about the kind of horses he was driving and how they were shod. There was an objection on the ground that it was a matter not gone into on the direct examination. The objection was overruled and exception taken.

One of the jurors on his *voir dire* stated that he had talked with the prosecuting witness about the arrest of defendant, that nothing was said about the facts in the case and that the juror had formed no opinion, and had thought no more about it. Defendant's challenge of the juror was overruled.

In his opening statement to the jury the prosecuting attorney stated that the defendant at the previous term of the court had forfeited his bond and that a requisition was issued for him. There was an objec-

tion by defendant. The court sustained the objection and told the jury not to consider the statement. There was no request for a rebuke of the prosecuting attorney, and no exception.

I. The fact that the information charges the larceny of two separate articles without stating the value of each does not invalidate the information when the aggregate value is stated. [State v. Koplan, 167 Mo. 298; State v. O'Connell, 144 Mo. 387.]

II. The challenged juror was not incompetent. He had talked with the prosecuting witness about the arrest of the defendant, but had heard none of the facts as to his guilt or innocence, and had formed no opinion. It was held in State v. Riddle, 179 Mo. l. c. 294, that when a juror had heard a part of the evidence of one witness, but had formed no opinion, he was a competent juror.

III. We consider the statement made by the prosecuting attorney that defendant had forfeited his bond and that a requisition had been issued for him as proper. It tended to show flight on the part of the defendant, which is "evidence of guilt and of a guilty conscience." Besides, the defendant's objection was sustained and the jury instructed to disregard the remarks, and there was no exception. Under the circumstances there was no error. [State v. Kullman, 225 Mo. l. c. 632.]

IV. The cross-examination of the defendant as to the kind of horses he was driving and how they were shod was germane to the subject-matter of the direct examination and was proper. He had testified that he had bought the buggy while traveling on the road from his house at Senath. The particulars of that journey were proper matter for cross-examination.

In the case of State v. Bell, 212 Mo. l. c. 122, cited by appellant, the direct testimony was as to one journey and the cross-examination as to another.

V. The instruction given on the subject of reasonable doubt was full and clear.

The defendant asked an instruction on the presumption of innocence and it was refused. It should have been given, but such refusal is not reversible error where the jury has been fully instructed on reasonable doubt. [State v. Maupin, 196 Mo. 164; State v. Kennedy, 154 Mo. l. c. 289.]

All the other instructions asked by defendant were fully covered by those given.

We find no reversible error in the record and the judgment is affirmed. *Blair, C.,* concurs.

PER CURIAM.—The foregoing opinion of Roy, C., is adopted as the opinion of the court. All the judges concur.