THE STATE v. ROBERT WHITE, Appellant.—34 S. W. (2d) 79.

Division Two, December 20, 1930.

*Fry & Hollingsworth* and *Marion S. Francis* for appellant.

*Stratton Shartel,* Attorney-General, and *A. B. Lovan,* Assistant Attorney-General, for respondent.

WESTHUES, C.—The defendant was charged by an information in the Circuit Court of Audrain County, Missouri, with the crime of robbery in the first degree. He was tried and convicted January 9, 1930, and his punishment fixed at five years in the state penitentiary. On January 10 defendant was granted a new trial. At the second trial, March 25, 1930, he was again convicted and given five years in the penitentiary. Motion for new trial was overruled and defendant sentenced, from which judgment he has appealed.

The defendant alleges sixteen assignments of error in his motion for new trial. Only three are pressed in the brief. After reading the

record, we deem it sufficient to consider only those urged. The assignments 1 and 2 in the brief may be considered together. They are, that the court erred in submitting the case to the jury on the issue of robbery in the first degree, there being no evidence to support that issue; the second, that the court erred in giving Instruction No. 1, in that it submitted the case to the jury upon two separate and distinct hypotheses, to-wit: first, robbery by force, and, second, robbery by putting the prosecuting witness in fear of immediate danger to her person. We will only relate the evidence relevant to, the issue raised. Two young ladies attending Hardin College, Mexico, Missouri, were taking a walk on October 1, 1929, about nine o'clock, P. M. While strolling along, one of the girls turned and noticed a man approaching, and she pushed her companion to the right side of the walk to enable him to pass. In a few seconds both noticed that someone was pushing them, each thinking it was her companion. At this point one of the young ladies, Roberta Stanley, looked over her shoulder and saw a negro. We quote witness's testimony, as follows:

"Q. All right; now, what occurred? A. We were going along and I thought Jean pushed me and she thought I pushed her, and I happened to look back over my shoulder and I saw the negro coming.

"Q. Coming? Now, where did he come to? A. He was in back of us; just in back of us.

"Q. And where did he come to? A. He snatched her purse just then and ran around the house. . . .

"Q. Now, in point of fact had you pushed Miss Middendorff or Miss Middendorff pushed you at the time you say you were jostled or whatever it was? A. Well, I didn't push her; I don't know whether she pushed me or not.

"Q. You didn't push her? A. No. .

"Q. Now, I will get you to state whether or not this man sitting here is the man you saw, the defendant here, is the man you saw that came up behind you that night, as you say, then took Miss Middendorff's purse? A. Yes.

"Q. Now, when you saw this man behind or at you there, what did you do, did you make any sound or anything? A. Well, I screamed and started running.

"Q. And what about Miss Middendorff, did she make any sound or anything? A. After her purse was taken she started running and screaming."

The other young lady, Jean Middendorff, testified in part, as follows:

"Q. Now, tell the jury, in your walk back to the college, if any unusual occurrence took place? A. Well, we were in about the middle of the second block going north from Hardin College, and I was on the inside and Roberta was on the outside.

"Q. You mean the inside of the pavement? A. Yes, sir.

"Q. Now, what street was it? A. Jefferson. And I don't know why I looked around, but I did, and I saw some—this man coming. At the time I didn't pay much attention to it, except that I saw someone was coming, and I moved—pushed Roberta to move over to the right so that they could pass, and we moved over to the right and we walked on about twelve feet and someone pushed between us, I thought it was Roberta pushing me and she thought it was me pushing her, and just about that time she looked around and saw this man and screamed and started to run, and I looked over my left shoulder and I had my pocketbook in my left hand and I saw this negro crouched at my side and he snatched my purse and ran."

The question presented is, should the court, under the testimony, have submitted to the jury an instruction on robbery in the first degree, as defined in Section 3307, Revised Statutes 1919. The instruction, in so far as pertinent to the issue, is as follows:

"If you find and believe from the evidence beyond a reasonable doubt that on the first day of October, 1929, at and in the County of Audrain and State of Missouri, the defendant feloniously took and carried away from the person of Jean Middendorff against her consent by force and violence to her person and by putting her in fear of immediate injury to her person, the pocket book and money described in evidence, . . ."

Reviewing the authorities on the question as to the amount of force necessary to constitute robbery in the first degree, there seems to be some conflict of authority. However, on a close examination of these cases we find them to be fairly harmonious. In the case of State v. Broderick, 59 Mo. 318, the evidence discloses that the defendant committed the theft by forcibly tearing a watch chain from the vest and watch of the prosecuting witness, the chain being fastened both to the vest and watch. The court in that case said:

"Whilst to constitute a robbery there must be a felonious taking of property from the person of another by force, either actual or constructive, by threatening words or gestures, yet if force be used, fear is not an essential ingredient. If there be violence sufficient to effect and carry out the evil intent. . . ."

In that case the court held that the act of the defendant constituted robbery, since enough force was used to tear the chain from the vest and watch. The Broderick case was cited and approved in State v. Moore, 106 Mo. 480, 17 S. W. 658; State v. Parker, 262 Mo. 169, 170 S. W. 1121; State v. Spivey (Mo. Sup.), 204 S. W. 259. The Court of Appeals considered this question in State v. Sommers, 12 Mo. App. 374. Here the testimony disclosed that the defendant attempted to snatch from the hands of a girl a bag in which she was carrying money. The defendant was prosecuted for larceny. The court instructed on an attempt to commit larceny. The court in that case said:

"Where a man walking after a woman in the street, snatches her shawl from her person, though he uses considerable violence, it is said this is not robbery; and so, where a person snatched another's watch from his fob, and got it after a scuffle. [Rex v. Gnosil, supra.] And this, for the reason that where the violence is used, not to overpower the person robbed, but only to get the property, there is no robbery. At any rate it seems to be now held that sudden snatching of property from a person is not robbery, if there is no struggle and no injury done to the person robbed."

This case was cited with approval in State v. Holmes, 317 Mo. 9, 295 S. W. 71; State v. Sharpe, 34 S. W. (2d) 75. Cyclopedia of Law and Procedure states the rule as follows: "The mere snatching of an article from the person of another, without violence or putting in fear, is not robbery, except where there is some injury or violence to the person of the owner or where the property snatched is so attached to the person or clothes of the owner as to afford resistance." [34 Cyc. 1800.]

This theory is supported by the weight of authority. [36 C. J. 754, note 3; 34 Cyc. 1799, also page 1800, note 26, and cases cited; Routt v. State, 61 Ark. 594, 34 S. W. 262.] So in this case the defendant, according to the witnesses, snatched the purse from the hand of prosecuting witness and fled. No overpowering force was used. Therefore, under the authorities cited above, we hold that the court erred in submitting to the jury the question of robbery in the first degree.

The defendant next urges that the court should have sustained the motion for new trial, for the reason juror Alexander was not competent to try the defendant. This juror was asked on the *voir dire* examination if he was acquainted with the defendant or knew of any reason why he could not sit as a juror and try the case fairly and impartially. The juror did not disclose that he knew the defendant, nor that he knew anything about the case, and was left on the panel of twelve that tried the defendant.

The defendant and his attorney filed affidavits in support of the motion for new trial, alleging, in substance, that juror Alexander was a member of the police force in October, 1929, was called to the scene of the crime and obtained a description of the alleged thief. A few days later, in company with another officer, he arrested the defendant as the alleged perpetrator of the crime and delivered him at the police station; that this information did not come to the defendant or his attorney nor did they know of it until the trial was over. The juror filed a counter-affidavit, in substance admitting he was a police officer in October, 1929, had assisted in seeking the defendant and aided in his arrest. But he did not discover that he knew the defendant on the date of the trial or that it was the same case until the prosecuting attorney made his opening statement to the

jury. The affidavit further recited that the juror had given the defendant a fair and impartial trial, voting "not guilty" on the first ballot. The court heard oral evidence in support of defendant's motion on this point. Since this case must be retried, we need not enter into a lengthy discussion of the evidence, affidavits and counter-affidavits in support of this issue.

The above contention may be best answered by quoting from a few authorities in point. In Theobald v. Transit Co., 191 Mo. 395, l. c. 416, 90 S. W. 354, it is said: "There is no feature of a trial more important and more necessary to the pure and just administration of the law than that every litigant shall be accorded a fair trial before a jury of his countrymen, who enter upon the trial totally disinterested and wholly unprejudiced. . . . The question of the qualification of a juror is a question to be decided by the court, and not one to be decided by a juror himself. It is the prerogative and duty of the trial court to exercise a wise, judicial discretion in this regard, and the conclusion of the court should rest upon the facts stated by the juror with reference to his state of mind, and should not be allowed to depend upon the conclusions of the juror as to whether or not he could or would divest himself of a prejudice he admitted existed in his mind."

This principle was approved in Gibney v. Transit Co., 204 Mo. 704, 721, 103 S. W. 43, and again in State v. Connor, 252 S. W. 713, 717. In the Gibney case, supra, the court quoted with approval the following from Heasley v. Nichols, 80 Pac. 769: "If the true condition of his (the juror's) mind had been made known to the court before he was accepted as a juror, he would have been excluded at once. The parties had a right to rely upon his sworn statement, and waived nothing by accepting him as a juror. But, when the attention of the court was called to the condition of the juror's mind in a proper way, it was the duty of the court to rectify the mistake by granting a new trial."

So in this case had the juror disclosed the facts as they existed, the court should have, without hesitation, excused the juror, although, in the opinion of the juror, he could have rendered a fair and impartial verdict. [35 C. J. 352, note 3, and cases cited; 35 C. J. 348, sec. 384, note 68, and cases cited.]

For the errors above indicated, the judgment is reversed and the cause remanded for a new trial. *Davis* and *Cooley, CC.,* concur.

PER CURIAM:—The foregoing opinion of WESTHUES, C., is adopted as the opinion of the court. All of the judges concur.