**STATE of Missouri,
Plaintiff–Respondent,**

v.

**Robert Ladell WALTON,
Defendant–Appellant.**

**No. 72462.**

Supreme Court of Missouri,
En Banc.

Sept. 20, 1990.

Rehearing Denied Oct. 16, 1990.

Susan Hogan, Columbia, for defendant-appellant.

William L. Webster, Atty. Gen., Deborah L. Ground, Ronald L. Jurgeson, Asst. Attys. Gen., Jefferson City, for plaintiff-respondent.

HOLSTEIN, Judge.

Robert Ladell Walton was convicted of second degree burglary, § 569.170, RSMo 1986, and stealing, § 570.030, RSMo 1986. He was sentenced to ten years imprisonment on each count. He appealed his conviction to the Missouri Court of Appeals, Western District. After the filing of the court of appeals' opinion, this Court granted transfer. Rule 83.03. With some modifications, this Court adopts the opinion of the appellate court authored by Anthony P. Nugent, Jr., Chief Judge. Affirmed.

When Bobby Harrison, his wife, Deborah, and their son, Brett Harrison, returned to their Lexington home from a ski trip, they found a strange car parked in their barn. At that time they did not investigate, but unloaded their belongings and began to unpack.

While unpacking, Brett Harrison discovered two rings and almost $200 missing from his dresser, and Mrs. Harrison found that someone had rummaged through her jewelry box. Bobby Harrison called the sheriff and reported the losses and the strange car in the barn.

After making the call, the Harrisons thought they heard a noise in their basement. The two men went to check. Deborah Harrison began to go through the closets. Brett heard his closet door moving and, armed with a rifle, went to his room and found defendant Walton in his closet.

Within minutes Deputy Robert Teichman arrived and arrested and handcuffed the defendant. As the deputy escorted the defendant out of the house, the Harrisons asked him what he had done with their property. He then led the Harrisons and the deputy to a bed in the basement. Be-

hind the bed the Harrisons found a plastic bag containing a box; inside the box they found Brett Harrison's rings, Deborah's costume jewelry and several silver dollars.

Brett then asked the defendant whether he had his money, and defendant pointed to the wallet in his pocket. Brett removed the wallet from defendant's back pocket. It held $172, including a $2 bill. Brett testified that he had a $2 bill in the money on his dresser. The defendant did not claim ownership of the money.

At trial, the defendant testified that he had been on his way to Higginsville when he began having car problems. Previous to that time, he and Brett Harrison rode to work together. He said that he parked his car in the Harrison's driveway and went to the front door. The Harrisons arrived soon afterwards. He explained his presence, and they entered the house together. The Harrisons discovered the theft of the money and jewelry and called the police. Deputy Teichman arrived shortly and arrested the defendant. Defendant protested that he did not have Brett's money.

Deputy Teichman repeated the Harrisons' account of what occurred. He also testified that later at the sheriff's office, defendant Walton gave an oral statement that he went to the Harrisons to purchase cocaine from Brett. He entered the house through a basement sliding glass door, went to Brett's room, and found no cocaine but took some money from Brett's dresser before the Harrisons found him.

A jury convicted defendant of second degree burglary and stealing and this appeal followed.

Defendant Walton argues three points on appeal: first, the trial court erred in permitting the trial to proceed after the state used its peremptory challenges to strike all black members of the venire. Second, the trial court erred in overruling his challenge for cause to Mary Steffens, a member of the venire, depriving him of a full panel of qualified jurors from which to make his peremptory challenges. Third, the trial court plainly erred in allowing the witnesses to testify that he had led them to the missing property and that he had allowed

them to remove his wallet, because those acts occurred for the purpose of interrogation while he was in custody but before the officer advised him of his *Miranda* rights.

■ In his first point, defendant argues that the state used its peremptory challenges to exclude all blacks from the jury in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The court of appeals ordered the case remanded for an evidentiary hearing on that issue.

At the hearing, J. Armin Rust, the prosecutor, appeared for the state. Defendant appeared in person and by attorney Dennis Rolf. Based on the evidence, the court found that the state had struck the only two blacks on the venire for clear, specific, neutral, and legitimate reasons related to the case.

Mr. Rust testified that he struck Michael Elmore because his brother, then serving a prison sentence, had been prosecuted in Lafayette County within the previous six months. Mr. Rust also testified that he struck Ethel Johnson because he associated her with a case in which, as public defender, he had represented a Johnson, probably either Mrs. Johnson's son or relative. Apparently, Mr. Rust did not ask Ms. Johnson to verify his supposition.

■ The hearing judge observed Mr. Rust's demeanor and found his explanation to be race-neutral. The judge also found that the defendant had offered no evidence to show a pattern or practice of the prosecutor's office using peremptory challenges in a racially discriminatory manner. No such showing need be made; the court will judge each case individually. *Batson v. Kentucky*, 476 U.S. at 95–96, 106 S.Ct. at 1722–1723; *Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266, 97 S.Ct. 555, 564, 50 L.Ed.2d 450, 465 (1977). The *Batson* court did say, however, that "a 'pattern' of strikes against black jurors included in the particular venire might give rise to an inference of discrimination." 476 U.S. at 97, 106 S.Ct. at 1723.

The trial court's account of the evidence in this case is quite "plausible in light of

the record viewed in its entirety" and, therefore, its conclusions are not clearly erroneous, the standard of review in such cases. *State v. Antwine,* 743 S.W.2d 51, 66 (Mo. banc 1987), *cert. denied,* 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988).

■ In his second point the defendant contends that the trial court erred in overruling his challenge for cause to a member of the venire, Mary Steffens, because the court thereby denied him a full panel of qualified jurors from which to make his peremptory challenges.

The following dialogue occurred during the *voir dire* examination:

MR. RUST [Prosecutor]: Does anyone else have any trouble sitting in a case where [Bobby Harrison, Debbie Harrison and Brett Harrison] are the witnesses? Yes, Mrs. Steffens?

VENIREMAN STEFFENS: Well, I also have talked to the Harrisons.

MR. RUST: You have talked to the Harrisons since that time?

VENIREMAN STEFFENS: Yes.

MR. RUST: And you talked to them about the facts of the case?

VENIREMAN STEFFENS: Well, it was brought up in conversation, yes.

MR. RUST: But, in any event, if you were called upon to be a juror in this case, do you think you could give both the State of Missouri a fair trial, and the defendant, Mr. Walton?

VENIREMAN STEFFENS: Yes, I do.

* * * * * *

MR. MAGEE [Defendant's attorney]: All right, now, Mrs. Steffens, same question. [Would the fact you are acquainted with the Harrisons influence you in your deliberations in this case, wherein you might be more apt to believe them than somebody else, or you might in the deliberations reflect upon your knowledge or acquaintanceships rather than what you see and hear from the witness stand?]

VENIREMAN STEFFENS: Same question? I think I could be fair. I do know the Harrisons, the whole family, but I think I could be—

MR. MAGEE: Do you know specifically anything about this matter we are talking about here?

VENIREMAN STEFFENS: As I said earlier, the case had been discussed at my home. Brett worked for my husband about five years ago, and when he was in high school, we lived on a farm, and he helped by husband on the farm, so—

MR. MAGEE: All right. So, there is some relationship? Would that relationship influence you?

VENIREMAN STEFFENS: I really don't think it would. No, it would not influence me.

MR. MAGEE: All right. Thank you.

■ To qualify as a juror, the venireman must be able to enter upon that service with an open mind free from bias and prejudice. *State v. Wheat,* 775 S.W.2d 155, 158 (Mo. banc 1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 744, 107 L.Ed.2d 762 (1990). The trial court has a duty to make an independent inquiry only when a venireman equivocates about his ability to be fair and impartial. *Id.* However, where an answer to a question suggests a possibility of bias and upon further questioning, the venireman gives unequivocal assurances of impartiality, the bare possibility of prejudice will not disqualify the juror or deprive the trial judge of discretion to seat the venireman. *State v. Lingar,* 726 S.W.2d 728, 734 (Mo. banc), *cert. denied,* 484 U.S. 872, 108 S.Ct. 206, 98 L.Ed.2d 157 (1987). It must clearly appear from the evidence that the challenged venireperson was in fact prejudiced. *State v. Thompson,* 723 S.W.2d 76, 84 (Mo.App.1987); *State v. Edwards,* 714 S.W.2d 786, 788 (Mo.App.1986).

■ A trial court has wide discretion in determining the qualifications of members of the venire, and on appeal the court will not disturb the trial court's ruling on a challenge for cause absent a clear abuse of discretion and a real probability of injury to the complaining party. *State v. Wheat,* 775 S.W.2d at 158. It is for the trial court, and not the venireperson, to determine whether a challenged member of the panel could be an impartial juror, but the testimo-

ny of the member concerning his ability to act impartially is evidence to be considered by the trial court. *State v. Reynolds,* 619 S.W.2d 741, 749 (Mo.1981). Because the trial court is in a better position to determine a venireman's ability to impartially follow the law, doubts as to the trial court's findings will be resolved in its favor. *State v. Smith,* 649 S.W.2d 417, 422 (Mo. banc 1983); *State v. Merritt,* 735 S.W.2d 399, 402 (Mo.App.1987).

■■■■ "A prolonged friendship by a venireman with a witness for a party, of itself, does not sustain contention that the refusal of the challenge for cause by the trial court was an abuse of discretion—absent a clearly drawn prejudice." *State v. Owens,* 620 S.W.2d 448, 450 (Mo.App.1981). In addition, prior knowledge about a case does not, per se, require that a potential juror be stricken when such knowledge does not preclude them from reaching a verdict based upon the evidence. *State v. Hayes,* 624 S.W.2d 16, 19 (Mo.1981); *State v. Thompson,* 723 S.W.2d at 84 (Mo.App. 1987). Familiarity with some of the facts of a case without formation of an opinion as to guilt or innocence does not disqualify a juror. *State v. Lee,* 556 S.W.2d 25, 31 (Mo.1977). *See also II ABA Standards of Criminal Justice,* § 8–3.5(b), commentary at p. 47 (Supp.1986).[1]

The defendant cites several cases in support of his second point. The facts of those cases distinguish them from the present case. In *State v. Holland,* 719 S.W.2d 453 (Mo. banc 1986), a venireman indicated he would "have a hard time" following the court's instructions if the defendant did not testify. During a conference after *voir dire,* the prosecutor mistakenly stated the events of the *voir dire,* and the judge, relying upon the mistaken recollection, overruled defendant's challenges for cause. This Court reversed the judgment, noting that had the prosecutor recalled the event correctly, the outcome of the case would have been quite different. *Id.* at

454–55. In *State v. Hopkins,* 687 S.W.2d 188 (Mo. banc 1985), a prospective juror was the father of two police officers, one of whom had died in the line of duty. His answers clearly indicated that he could not serve as an impartial juror. At most, he wanted and hoped to remain impartial. However, he never unequivocally indicated he could be impartial. *Id.* at 190–91. The prospective juror in *State v. Lovell,* 506 S.W.2d 441, 443–44 (Mo. banc 1974), could say only that he *thought* he could be a fair and impartial juror. In each of the cases relied upon, the venireman gave a direct or equivocal answer indicating that he or she might not be fair and impartial as a juror. That is not the case here. Mary Steffens indicated unequivocally to both parties that she could be a fair and impartial juror.

*State v. Wacaser,* 794 S.W.2d 190 (Mo. banc 1990), is also factually distinguishable from this case. There one potential juror repeatedly equivocated as to his ability to return a verdict based upon the facts and the law. Only when the question was rephrased several times and the venireman directed to give a yes-or-no answer did he, somewhat reluctantly, indicate he would follow the law. A second potential juror indicated she would possibly be swayed due to pretrial publicity and her emotions in deciding the case. Ms. Steffens was not equivocal regarding her ability to sit in the case.

■■■■ This record contains no details or circumstances of the acquaintance and conversation between Ms. Steffens and the Harrisons. Ms. Steffens was not shown to have formed any opinion or to have been exposed to any facts indicating defendant's guilt. The acquaintance and conversation about the case may have been prejudicial or may have been innocuous. To conclude the communication was prejudicial requires one to engage in assumptions not sup-

---

1. The cited commentary states: "There are two situations in which disqualification is automatic ... (1) when a prospective juror claims to be unable to overcome preconceptions, and (2) when the prospective juror has seen or heard such incriminating or highly inflammatory material that any claim of impartiality cannot be credited no matter how sincere it appears to be."

ported by the record. The existence of bias was no more than a bare possibility.

Qualified jurors need not, however, be totally ignorant of the facts and issues involved.... At the same time, the juror's assurances that he is equal to this task cannot be dispositive of the accused's rights, and it remains open to the defendant to demonstrate "the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality."

*Murphy v. Florida,* 421 U.S. 794, 799–800, 95 S.Ct. 2031, 2036, 44 L.Ed.2d 589, 594–95 (1975), quoting *Irvin v. Dowd,* 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751, 756 (1961). The burden is on the defendant to probe into any area on *voir dire* which is considered to be grounds for disqualification. *State v. Clemmons,* 753 S.W.2d 901, 907 (Mo. banc 1988). The time and place for defendant to demonstrate facts showing actual prejudice by a member of the venire was during *voir dire.*[2] If counsel felt Ms. Steffens' responses were indicative of bias and prejudice it was his obligation to seek specific answers to unequivocal questions. *State v. Cheesebrew,* 575 S.W.2d 218, 222 (Mo.App.1978). Failure to ask the obvious questions, coupled with Ms. Steffens' unqualified declaration that her contacts with the victims would not influence her decision, disposes of defendant's claim of error. The trial court was in a better position to determine Ms. Steffens' credibility and apparently believed her. Defendant has failed to show a clear abuse of discretion.

The trial court could have and perhaps ought to have eliminated this potential problem by allowing the defendant's challenge for cause. It is puzzling that a trial court would run the risk of prejudice and reversal where that risk can be so easily avoided. *See State v. Stewart,* 692 S.W.2d 295, 299 (Mo. banc 1985). Nevertheless,

defendant in this case failed to elicit facts sufficient to overcome the prospective juror's assurance of impartiality and to permit an inference of actual prejudice. *Murphy,* 421 U.S. at 803, 95 S.Ct. at 2037.

■ In his third point, the defendant argues that the trial court clearly erred in allowing the complaining witness and Deputy Teichman to testify that the defendant led them to a bag containing the missing property and allowed them to remove his wallet and told them the money in his wallet belonged to Brett Harrison. He contends that admission of such statements made while in custody before the officer advised him of his constitutional rights violated his right not to incriminate himself. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Defendant made no objection at trial to the admission of the evidence of his incriminating statements and acts. Accordingly, we limit our review to whether the trial court committed plain error. Rule 30.20.

The Harrisons found defendant Walton hiding in a closet in their home. They called the sheriff and a deputy arrived and arrested the defendant. As the deputy led him from the house, the Harrisons asked him what he had done with their property. He led them to their property hidden in the basement. He also disclosed that Brett Harrison's money was in the wallet. He now claims that those actions and statements should not have been admitted because he had not been advised of his *Miranda* rights. Not so. The *Miranda* rule "does not apply to statements made to non-police personnel under circumstances not amounting to custodial interrogation." *State v. Stevens,* 467 S.W.2d 10, 20–21 (Mo. 1971). The defendant argues that because he had been placed under arrest and held for questioning, that *Miranda* should ap-

---

**2.** Counsel could have asked Ms. Steffens if the conversation caused her to form any opinions regarding defendant's guilt or innocence. Counsel could have inquired if the Harrisons had told Ms. Steffens about the details of the case or of defendant's involvement. Neither these nor similar questions, answerable by a simple "yes" or "no," would taint other members

of the panel. If counsel was still concerned about what Ms. Steffens was told and did not wish to have that information disclosed to the balance of the panel, he could have asked the court to continue her *voir dire* out of the presence of the other jurors. Counsel made no attempt to do so.

ply. True, the deputy had the defendant in custody at the time, but he had not questioned the defendant at all. The evidence supports the conclusion that the defendant acted voluntarily in making the statements and disclosing the location of the Harrisons' property, and that his answers did not arise from questioning by police personnel. No manifest injustice occurred.

For the foregoing reasons, the judgment of the trial court is affirmed.

RENDLEN, HIGGINS and COVINGTON, JJ., concur.

GEORGE M. FLANIGAN, Special Judge, dissents in separate opinion filed.

BLACKMAR, C.J., and ROBERTSON, J., dissent and concur in separate dissenting opinion of GEORGE M. FLANIGAN, Special Judge.

BILLINGS, J., not sitting.

GEORGE M. FLANIGAN, Special Judge, dissenting.

I respectfully dissent.

I disagree with the majority opinion's disposition of defendant's second point. In my view, the trial court clearly abused its discretion in overruling defendant's challenge for cause to Mary Steffens, a member of the venire. I do not disagree with the principles set forth in the majority opinion's treatment of defendant's second point but, in my view, the majority opinion misapplies those principles to the peculiar facts which the record discloses.

It is rare for the testimony of a defendant in a burglary case to be in direct conflict with the testimony of the victim, but here there was such a conflict. The three victims gave their version of the incident, which included finding defendant in Brett Harrison's closet. Defendant testified that he and the three Harrisons entered the house together.

The majority opinion has set forth in full the voir dire examination of Mary Steffens.

When the veniremen were asked if any member would "have trouble sitting," Mrs. Steffens volunteered that she had talked to the Harrisons since the burglary and that in the conversation the facts of the case had been brought up. Asked later if she knew "specifically anything about this matter we are talking about here," she responded: "As I said earlier, the case had been discussed at my home." These answers show that in Steffens' conversation at her home with all three Harrisons concerning the burglary she was told something specific about the burglary. In my view, these answers required sustention of a challenge for cause despite her statements that she thought she could give the state and the defendant a fair trial and that she did not think her relationship with Brett Harrison would influence her, and that it would not influence her.

At the conclusion of voir dire, Mr. Magee challenged Mrs. Steffens for cause. In denying the challenge, the court said: "She did say she thought she could be fair." The defendant used one of his peremptory challenges to eliminate Mrs. Steffens.

A defendant is entitled to a full panel of qualified jurors before being required to make peremptory challenges, and the failure to sustain a meritorious challenge for cause is prejudicial error. *State v. Wacaser*, 794 S.W.2d 190 (Mo. banc 1990). To qualify as a juror, the venireman must be able to enter upon that service with an open mind, free from bias and prejudice. *State v. Wheat*, 775 S.W.2d 155, 158[3] (Mo. banc 1989). "Mindful of the trial court's unique opportunity to observe the venireman during voir dire, an appellate court will not disturb a ruling on a challenge for cause unless it constitutes a clear abuse of discretion and a real probability of injury to the complaining party." *Id.* Here there was such abuse and such probability.

Section 546.150, which was in effect at the time of the instant trial and was repealed in 1989,[1] read:

> or any material fact in controversy in any case that may influence the judgment of such

---

**1.** The new statute dealing with challenges for cause is § 494.470. Its provisions include:
"1. ... [N]o person who has formed or expressed an opinion concerning the matter

"It shall be a good cause of challenge to a juror that he has formed or delivered an opinion on the issue, or any material fact to be tried, but if it appear that such opinion is founded only on rumor and newspaper reports, and not such as to prejudice or bias the mind of the juror, he may be sworn."

In *State v. DeClue,* 400 S.W.2d 50, 56 (Mo.1966), the Court said: "[§ 546.150] is not all inclusive, and the fact that the statute enumerates certain grounds of disqualification does not exclude other grounds of incompetency." See also *State v. Miller,* 156 Mo. 76, 56 S.W. 907, 909[2] (1900); *State v. West,* 69 Mo. 401, 402–403 (1879). In *Murphy v. Cole,* 338 Mo. 13, 88 S.W.2d 1023, 1024 (1935), the Court said:

"If for any reason, whether statutory or not, a prospective juror is not in a position to enter the jury box with an open mind, free from bias or prejudice in favor of or against either party to the cause, and decide the case upon the evidence adduced and the law as contained in the court's instructions, he is not a competent juror."

"The question of the qualification of a juror is a question to be decided by the court, and not one to be decided by a juror himself." *State v. White,* 326 Mo. 1000, 34 S.W.2d 79, 81 (1930). "[E]rrors in the exclusion of potential jurors should always be on the side of caution." *State v. Draper,* 675 S.W.2d 863, 865 (Mo. banc 1984).

In *State v. Foley,* 144 Mo. 600, 46 S.W. 733, 736 (1898), the Court said:

"Certain rules of practice in the selection of jurors have long prevailed in this state, and have received the sanction of the courts and approbation of the bar. If a person has formed or expressed an opinion upon his own knowledge of the facts in the case, *or from conversing with the witnesses,* or read the sworn evidence taken before the coroner on preliminary examination in the case, or if his

person ... shall be sworn as a juror in the same cause.

4. A prospective juror may be challenged for cause for any reason mentioned in this

opinion has been engendered by hearing the witnesses testify under oath in a former trial of the same case, *the uniform practice has been to reject such a person as incompetent to serve as a juror.* An opinion formed under *either* of the conditions just named disqualifies him to act as impartial juror, *however much he may asseverate his ability to render an impartial verdict. The law will not, under such circumstances, permit him to judge of his own disinterestedness.* An opinion thus formed does not fall within the exception to the statute [§ 546.150 RSMo 1986] as one based merely upon rumor or newspaper reports, but is strictly within the rule of exclusion prescribed by the statute, which declares it good cause of challenge if he has formed or expressed an opinion on the issue or any material fact to be tried. *Men who have thus formed opinions are just as ready to declare their ability to discard them, and render a verdict solely upon the evidence,* as those who have read only newspaper reports; *but experience has taught the danger of confiding to them the issues of life or liberty."* (Emphasis added.)

See also *State v. Hultz,* 106 Mo. 41, 16 S.W. 940, 942–943 (1891); *The State v. Walton,* 74 Mo. 270, 284 (1881).

Although it is distinguishable, *State v. Dudley,* 245 Mo. 177, 149 S.W. 449 (1912), merits mention. There defendant was found guilty of stealing a buggy from one Vardell. On voir dire, one of the veniremen stated that he had talked to Vardell about the arrest of the defendant, that nothing was said about the facts in the case, and that he had formed no opinion and had thought no more about it. The trial court overruled defendant's challenge for cause. At 450 of 149 S.W. the Court said: "The challenged juror was not incompetent. He had talked with the prosecuting witness about the *arrest* of the defendant, *but had heard none of the facts as to*

section and also for any causes authorized by the law."

*his guilt or innocence,* and had formed no opinion." (Emphasis added.)

Unlike the situation in *Dudley,* Mrs. Steffens discussed with the Harrisons the facts of the case. It is true that the content of that discussion, other than what has been stated, was not spelled out. Any follow-up examination of Mrs. Steffens, at that time, concerning the particulars of the discussion could have tainted the entire venire, for the other members would have heard, through one of their colleagues, extrajudicial statements of the Harrisons concerning the incident on trial. Perhaps defense counsel felt he had already demonstrated, as I believe he had, that Mrs. Steffens should be disqualified for cause and therefore did not request a follow-up examination outside the hearing of the other veniremen.

Under the circumstances here, it is of no moment that Mrs. Steffens was not asked whether she had formed an opinion. Her somewhat equivocal statements that she could be fair, and her ultimate remark that her relationship with Brett Harrison would not influence her, were doubtless made in good faith. Nothing in the record indicates otherwise. Indeed, her candor is commendable. She was, however, not the judge of her own qualifications.

The inconvenience of obtaining another person as a qualified venireman is a small premium to pay to avoid the risk of denying either side a fair trial. In my view the fact that a venireman had a conversation with the victim concerning the facts of the offense on trial disqualifies the venireman from serving as a juror.

The principal opinion cites no Missouri or outstate case which upholds a trial court's denial of a challenge for cause in a factual situation similar to that at bar. So far as I can determine, the majority opinion is the first so holding. I think the reason is that trial judges throughout the nation confronted with such a situation would routinely sustain a challenge for cause and there would be no appeal from that ruling.

In my view, the defendant was deprived of a fair trial and is entitled to a new one.