STATE of Missouri, Plaintiff–Respondent,

v.

Thomas B. PLASTER, Defendant–Appellant.

No. 58851.

Missouri Court of Appeals, Eastern District, Division One.

July 23, 1991.

Marcie W. Bower, Columbia, for defendant-appellant.

William L. Webster, Atty. Gen., Millie Aulbur, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

PUDLOWSKI, Presiding Judge.

Defendant, Thomas B. Plaster, was found guilty after a jury trial of attempted arson in the first degree, in the Circuit Court of Franklin County and was sentenced to six years imprisonment. This appeal follows.

Viewing the evidence in the light most favorable to the verdict reveals that the defendant met and started dating Patty Hadley in September of 1986. Five or six months later Patty and the defendant moved in together, living in a few different places until finally settling in a trailer across the street from Patty's mother's trailer home. This arrangement continued until July 4, 1989, when Patty decided to leave and move in with her mother.

A couple of weeks after Patty moved back in with her mother and two sisters, the Hadley family all moved into a new trailer in the Pacific Summit Estates trailer park in Franklin County. They never told the defendant that they were moving or gave him their new phone number but soon thereafter the defendant started making threatening phone calls two or three times a day to the new Hadley family trailer home. During this time Patty never made any phone calls to the defendant.

On the evening of October 8, 1989, Patty went to work at a local nursing home leaving her mother and Dawn, one of her two sisters at their trailer home. At approximately 10:30 that evening Patty's mother and Dawn were sitting in the living room of the trailer home, watching television, when a large explosion shook the trailer. Patty's mother and Dawn, both looked outside the trailer home but couldn't see anything because of the smoke. Patty's mother called the sheriff's department and they in turn called in fire investigators and agents from the Bureau of Alcohol, Tobacco and Firearms.

During the ensuing investigation law enforcement authorities found a fragmented eleven inch metal pipe, some wires in the yard and a blackened spot on the asphalt road in front of the trailer. These law enforcement authorities interviewed Patty Hadley's family and were told that the defendant had been repeatedly harassing Patty and her family and further, that the defendant had made many bomb threats.

Law enforcement authorities also interviewed Joel and Dixie White who lived in a nearby trailer in the trailer park on the other side of a wooded area from Patty Hadley's trailer home. Dixie White stated that both she and her husband were awakened by the explosion the night of October 8, 1989, and that when she got out of bed and went to look out the window she saw a figure running out of the wooded area separating their trailer home from Patty Hadley's trailer home. Joel got up and went outside and both Joel and Dixie called to the figure to stop and to tell them what had happened. The figure finally stopped and approached Joel. Joel walked out to meet him and got to about three feet away from the figure who he later identified as the defendant, Tom Plaster. During the conversation that ensued, Joel ob-

served the defendant to be out of breath, kind of jittery and real excited. Joel also observed the defendant to be carrying a red duffel bag over his shoulder. The defendant denied knowing anything about the explosion and simply stated that he had to get out of there.

During their investigation law enforcement authorities interviewed the Benton family who were close friends of the defendant. Valerie Benton testified that the defendant came by the Bentons' house on Thursday October 5, 1989, carrying a red bag. The defendant told Valerie he had to show her something and proceeded to open the red bag and take out a foot long round piece of metal with metal caps on it and a green wick sticking out, telling Valerie it was a bomb. The defendant also showed the bomb to Randy Copeland, Valerie's boyfriend.

On Friday, October 6, 1989, the defendant stopped by the Benton residence again and stayed the weekend, continually making threats against Patty Hadley's mother. Pat Benton, Valerie's mother was away for the weekend. On Saturday, October 7, 1989, Valerie Benton and Randy Copeland again observed the defendant open up his red bag, but this time they observed the defendant take out three metal pipes all taped together with end caps and fuses. On Sunday, October 8, 1989, Valerie and Randy observed the defendant take out an ice cream push tube at the kitchen table and put plastic on the end of it. The defendant then pulled out some black, grainy material from his red bag which he poured into the tube and he took out some liquid and put that into the tube. The defendant put a cap on the tube, placed a green wick in it and put it in his red bag. The defendant left the Benton house that night some time in the early evening.

On Monday morning, October 9, 1989, Pat Benton, arrived back home and the defendant came back to the Benton home that morning asking Pat if she had heard anything about an explosion and admitting that he attempted to blow up Patty Hadley's family's trailer home.

Also on Monday, law enforcement authorities went to the home of the defendant's mother, Etta Plaster and asked to search the house and more specifically the room in which the defendant sometimes stayed. Etta consented to this search and the officers found diagrams of the Pacific Summit Estates trailer park and of the Hadley trailer home. Law enforcement authorities also found a red bag.

Defendant's first point on appeal alleges that the trial court abused its discretion in striking venirepersons Carole Hommes and Harry Miller for cause, because both venirepersons gave unequivocal answers during the voir dire examination that indicated their ability to sit as fair and impartial jurors. Defendant further claims that this action by the trial court effectively granted the state additional peremptory strikes.

■ It has been well established that "[a] trial court has wide discretion in determining the qualifications of members of the venire, and on appeal the court will not disturb the trial court's ruling on a challenge for cause absent a clear abuse of discretion and a real probability of injury to the complaining party." *State v. Walton*, 796 S.W.2d 374, 377 (Mo. banc 1990). Because of its ability to observe the demeanor and evaluate the responses of each venireperson, the trial court is in a superior position to evaluate a venireperson's ability to impartially follow the law and any doubts as to the decision of the trial court in this regard should be resolved in its favor. *Id.* at 378.

■ The trial court based its order sustaining a challenge for cause of venireperson Hommes, on the fact that Hommes vacillated when answering some of the prosecuting attorney's questions during voir dire. The trial court further found that Hommes would not be qualified to serve as a juror in this case because she had many "experiences" which would raise doubts as to her ability to be fair and impartial. These experiences included: reading extensively about this case in the newspaper when it was first reported, having had a close personal friend or member of the family charged with accessory to

murder, having the tires of her car slashed and having had several close friends experience harassment. The defense alleges that venireperson Hommes gave unequivocal assurances of impartiality when she was questioned as to whether these four experiences would affect her ability to sit as a fair juror. We disagree.

When Hommes was asked by the prosecuting attorney whether she or any member of her family or a close friend had ever experienced harassment, the following colloquy occurred:

VENIREMAN HOMMES: I've had several close friends undergo that.

[Prosecutor]: Okay. The reason I ask, I anticipate you will hear testimony that harassment occurred after the end of a relationship. Is that going to affect you one way or the other in terms of listening to the evidence and rendering a decision?

VENIREMAN HOMMES: I can't honestly say.

[Prosecutor]: You think it might?

VENIREMAN HOMMES: I think it might.

[Prosecutor]: You understand that we ask that you be able to wait until the end of all the evidence before you make a decision?

VENIREMAN HOMMES: Uh-huh.

[Prosecutor]: Would you be able to do that?

VENIREMAN HOMMES: I think so. I don't think I would have any problems.

A trial court should always err "on the side of caution in ruling on challenges for cause in criminal cases where a replacement can easily be obtained for a prospective juror of doubtful qualifications." *State v. Stewart*, 692 S.W.2d 295, 299 (Mo. banc 1985); *State v. Hopkins*, 687 S.W.2d 188, 190 (Mo. banc 1985). Given this mandate a trial court's discretion to exclude a venireperson in order to avoid leaving a potentially prejudiced venireperson on the jury panel will not be disturbed by us. The trial court could have believed that venireperson Hommes gave an equivocating answer to the prosecution's question about whether the harassment of several of her close friends would affect her ability to render a fair and impartial verdict in this trial. The trial court determined to err on the side of caution in selecting fair and impartial jurors and we will not discourage such practice.

■ Venireperson Miller was asked by the prosecution during voir dire if he or a member of his family or a close friend had ever been charged with a crime. Miller stated outside the hearing of the rest of the venire that he had been charged with patronizing a prostitute and that this charge resulted in his pleading guilty and receiving a suspended imposition of sentence. Miller acknowledged that the prosecutor involved in this case was the same one that prosecuted his criminal charge.

The trial court sustained the challenge for cause of venireperson Miller because contrary to Miller's responses, the court believed Miller would not be completely impartial towards the presentation of evidence by the prosecution. The court also acknowledged that it would be against human nature for Miller to be entirely unbiased against the prosecutor who prosecuted his patronizing a prostitute charge. We again believe that the trial court properly decided to err on the side of caution in sustaining the challenge for cause of venireperson Miller, thereby removing a potentially biased juror from the jury panel. Point denied.

■ Defendant's second point on appeal alleges that the trial court erred in refusing to declare a mistrial when in her testimony, Valerie Benton referred to a letter the defendant allegedly sent to the Benton family which Valerie interpreted as a bomb threat. Defendant alleges that this testimony allowed the jury to use evidence of a separate crime to convict the defendant of the charged offense. The letter that Valerie testified about was received on February 14, 1990, one day prior to defendant's preliminary hearing and was addressed to Valerie's mother and father. Valerie testified that she recognized the defendant's handwriting and that she opened it because she didn't want her mother to see the contents. The letter consisted of a large piece of paper with a

big question mark and a clock drawn on it. The hands of the clock were set at 3:25 and at the bottom of the letter there was a three then a blank and then a ninety, which Valerie interpreted as meaning a bomb threat for sometime in March of 1990.

The trial court initially overruled an objection by defense counsel to Valerie's testimony regarding the letter but then sustained defense counsel's objection when the state attempted to admit the letter into evidence. When the state tried to admit the letter into evidence the court examined it and stated that "there's nothing on here that looks like a bomb of any kind."

Once the court sustained the objection to the admission of the letter into evidence, defense counsel asked for an instruction by the court to the jury for them to disregard any reference to the letter. This request was granted:

> THE COURT: Jurors, I've ruled that this piece of mail that the witness has been talking about is irrelevant and immaterial to any issues which you'll need to decide, and so I'm asking you and instructing you to disregard the testimony about the letter that came through the mail.

Defense counsel then requested the granting of a mistrial, but the court denied this request believing that any error in allowing the testimony regarding this letter was not prejudicial enough to the defendant to warrant the granting of a mistrial.

> The declaration of a mistrial is a drastic remedy that should be employed only in those extraordinary circumstances in which prejudice to the defendant can be removed no other way. [citations omitted] Whether a mistrial should be declared rests largely within the discretion of the trial court, [citations omitted] because the trial court observes the incident that precipitates the request for a mistrial and is in a better position than is the appellate court to determine what prejudicial effect, if any, the incident has on the jury, [citations omitted]. The trial court's decision whether to grant a mistrial will not be disturbed in the absence of an abuse of discretion, [citations omitted].

*State v. Davis*, 653 S.W.2d 167, 176 (Mo. banc 1983).

The trial court did not abuse its discretion in preferring the remedial route of a limiting instruction over the drastic remedy of a mistrial because Valerie's comments about a bomb threat letter, when taken in the context of the testimonial evidence as a whole, did not establish the necessary extraordinary circumstances in which prejudice to the defendant could be removed in any other way. Point denied.

Judgment affirmed.

KAROHL and GRIMM, JJ., concur.