**STATE of Missouri, Respondent,**

v.

**William E. WILSON, Appellant.**

**No. WD 56327.**

Missouri Court of Appeals, Western District.

Sept. 7, 1999.

Richard E. McFadin, Gallatin, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Barbara K. Chesser, Asst. Atty. Gen., Jefferson City., for respondent.

Before Presiding Judge, HAROLD L. LOWENSTEIN, Judge FOREST W. HANNA, and Judge LAURA DENVIR STITH.

LAURA DENVIR STITH, Judge.

Defendant, William E. Wilson, was convicted in the Circuit Court of Livingston County, of a class D felony under § 577.010 RSMo 1994 for driving while intoxicated and was sentenced to five years imprisonment. Mr. Wilson raises two points on appeal, the first of which is dispositive. He asserts that two of the jurors

serving on the jury, Mr. Wheeler and Mr. Anderson, equivocated on voir dire as to whether they would be fair and impartial to a defendant who did not testify at trial, and that the trial court therefore erred in denying his challenge of these two venirepersons for cause. The State agrees that the trial court committed reversible error in refusing to strike Mr. Anderson for cause, and concurs in defendant's request that we remand for a new trial. Because we agree that the trial court erred in denying defendant's challenge for cause as to Mr. Anderson, we reverse and remand for a new trial.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In the early morning hours of December 8, 1996, Officer Dean Davis stopped Mr. Wilson's vehicle for travelling 52 miles per hour in a 35 mile per hour zone. As he approached the car, Officer Davis noticed a strong odor of alcohol. Mr. Wilson admitted to having had a "few drinks". The officer checked Mr. Wilson's driving record and learned that his license had been revoked. He also gave Mr. Wilson a horizontal gaze nystagmus test and a portable breathalyzer test. Based on these test results, and on the officer's 14 years of experience, the smell of alcohol, Mr. Wilson's admission he had been drinking, and Mr. Wilson's use of abusive language, Officer Dean believed Mr. Wilson to be intoxicated and impaired and arrested him for driving while intoxicated. Mr. Wilson was subsequently charged with that crime.

At trial, Mr. McFadin, counsel for defendant, asked during voir dire whether any venireperson would infer guilt or be affected if Mr. Wilson chose not to take the stand in his own defense. Eleven of the potential jurors, including Mr. Wheeler and Mr. Anderson, indicated that they would be affected by defendant's failure to testify, most saying that they wanted to hear evidence from both sides.

The court gave the prosecutor permission to attempt to rehabilitate those prospective jurors who indicated they would be affected if Mr. Wilson did not testify. The prosecutor asked those jurors whether they would be able to follow the court's instructions despite their concern about the defendant's failure to testify, stating:

> Ladies and gentlemen, Mr. McFadin asked you the question about the Defendant not testifying if he so elected, and a number of you indicated that it might have an effect on how you view the case. The Court will instruct you that if the Defendant does not take the stand, you are to draw no adverse inference from that whatsoever. If the Court so instructs you, and I'm going to go through each of you if my notes indicated that you would have a problem.

> The question is, if the Court so instructs you, will you follow the Court's instruction and not draw an adverse inference from the Defendant's refusal to testify?

All 11 persons who had said they would be affected indicated they would follow the court's instructions not to draw an "adverse inference", although some said this would be difficult. Both Mr. Wheeler and Mr. Anderson answered, "Yes, sir", when asked if they would follow such an instruction.

In response to this attempt by the State to rehabilitate these venirepersons, defense counsel posed the following general question:

> Ladies and gentlemen of the jury, *many of you raised your hand and many of you said that it was difficult for you to render a fair and just verdict for one reason or another. Some for the Defendant not testifying.* Some because of drinking alcoholic beverages, etc. *And is there anybody that has changed their mind that made the statement that they could not render a fair and just verdict based upon the evidence because of those reasons?* Anybody had a change of heart, raise your hands. I take it by your expression of silence that you're

sticking with the answers that you gave me. Thank you....

(emphasis added). Defense counsel then asked a final, related question:

I think I've already asked the ladies and gentlemen of the jury and I think that *even though you said that you would follow the instructions, I believe some of you said it would be difficult if he [defendant] did not testify, that it would affect you. Anybody change their mind on that? Thank you.*

(emphasis added). So far as the record demonstrates, neither Mr. Anderson, Mr. Wheeler, nor any of the other 11 venire persons who had indicated a concern about a defendant's failure to testify, indicated they had changed their mind about these concerns.

Defense counsel challenged for cause all 11 venire persons who expressed an inability to be fair and impartial if the defendant did not testify. The court overruled each challenge. In response to the Court's ruling, defense counsel requested that voir dire be reopened to address what could at best be called equivocation, on this issue by the jurors. The Court denied the request. Of the 11 venirpersons who indicated that a failure to testify would affect them, only Mr. Wheeler and Mr. Anderson sat on the jury. The jury convicted Mr. Wilson. He now appeals alleging the trial court committed reversible error in refusing to strike Mr. Wheeler and Mr. Anderson.

## II. FAILURE TO STRIKE UNQUALIFIED JUROR

 As stated in *State v. Walker,* 795 S.W.2d 522 (Mo.App. W.D.1990):

An individual accused of a crime is entitled to a full panel of qualified jurors before he is required to expend his peremptory challenges. *State v. Schwer,* 757 S.W.2d 258, 262 (Mo.App.1988); *State v. Bebermeyer,* 743 S.W.2d 516, 519 (Mo.App.1987). For a trial court to deny a legitimate challenge for cause

constitutes an abuse of discretion and reversible error. *Schwer, supra,* at 262.
*Id.* at 525. A legitimate challenge is made where it clearly appears from the evidence that the venireperson is prejudiced and, as a result, cannot be fair and impartial. *See generally State v. Walton,* 796 S.W.2d 374, 377 (Mo. banc 1990). A venireperson who cannot be fair and impartial is not qualified to serve on the jury. *Id.*

 A trial judge has broad discretion in determining which venirepersons are qualified to serve, for the trial judge is in the best position to observe the demeanor and tone of the venirpersons, whereas the appellate court can consider only the cold record in determining qualifications. *State v. Moore,* 927 S.W.2d 439, 440 (Mo. App. W.D.1996); *Walker,* 795 S.W.2d at 525. Accordingly, when reviewing a trial court's denial of a challenge for cause, we resolve doubts as to the judgment of the trial court in its favor. *Walton,* 796 S.W.2d at 378. Moreover, in considering whether the trial court erred, we are guided by the principle that a juror's ability to be fair and impartial is to be determined based on his or her responses as a whole, rather than by focusing on individual responses to specific questions.

 Thus, the fact that, considered alone, a juror's answer to a particular question may raise the bare possibility of prejudice, is not enough to render a juror unqualified or deny the trial judge the discretion to find he or she is qualified. *Id.* at 377. The challenged venireperson must in fact be prejudiced. *Id.* This means that, if the prospective juror states he or she can set aside a stated concern, be fair and impartial, and follow the court's instructions, the prospective juror has been rehabilitated and a challenge for cause will be denied. Where the prospective juror's answers seem to be equivocal about his or her ability to be fair and impartial, however, then the trial court has an obligation to conduct additional questioning. *Id. See also Moore,* 927 S.W.2d at 441; *Walker,* 795 S.W.2d at 525. If the

juror is not rehabilitated by such questioning, or then demonstrates an inability to be fair and impartial, he or she must be stricken. *Id.*

■ These principles are directly applicable here. In this case, both Mr. Wilson and the State agree that Juror Anderson at best equivocated as to whether he could be fair and impartial if Mr. Wilson failed to testify, and arguably simply stated that he could not be fair. More specifically, during defense counsel's initial voir dire questioning, Mr. Anderson clearly stated that if defendant did not testify, then Mr. Anderson's ability to render a fair and just verdict would be affected. At the close of defense counsel's voir dire and at the State's request, the trial court permitted the State to ask each of the venirepersons who indicated they would be affected by defendant's failure to testify, "[I]f the Court so instructs you, will you follow the Court's instruction and not draw an adverse inference from the defendant's refusal to testify?" Mr. Anderson answered clearly and affirmatively agreed not to draw an adverse inference, although no one explained to him what an adverse inference was and that his answer meant he should not consider the failure to testify at all. In any event, when, following this response, defense counsel specifically asked whether any of the 11 venirepersons who had said that Mr. Wilson's failure to testify would affect them had changed

their minds and whether it would still bother them even though they indicated they would follow the court's instructions about adverse inferences, neither Mr. Anderson nor any other prospective juror indicated they had changed their view that they would be affected by defendant's failure to testify.[1]

Considering Mr. Anderson's negative responses to questions regarding defendant's failure to testify, and his lack of response to defense counsel's final general questions on voir dire as to whether he had changed his mind that the failure to testify would affect him, we agree with the State and the defendant that Mr. Anderson's response to the State's question about following the court's instructions was insufficient to rehabilitate him, that Mr. Anderson's ability to be fair and impartial was at best equivocal, and that the trial court erred in failing to strike him for cause.

For the foregoing reasons, we reverse the conviction and remand for a new trial.[2]

Judge HAROLD L. LOWENSTEIN and Judge FOREST W. HANNA concur.

---

1. Usually, "[l]ack of response to general questions is not conclusive on the issue of bias, particularly as the juror's own conclusions in this regard are not dispositive." *State v. Draper*, 675 S.W.2d 863, 865 (Mo. banc 1984); *State v. Lovell*, 506 S.W.2d 441, 444 (Mo. banc 1974). Here, however, these questions are considered in light of the fact that Mr. Anderson's silence reaffirmed his specific prior statement that he would be biased if defendant failed to testify. Moreover, Mr. Anderson's general statement that he believed he would follow the court's instruction not to draw an adverse inference, however clear, could not be dispositive of his ability to be fair and impartial if defendant failed to testify. *Walton*, 796 S.W.2d at 377–78.

2. Because of our resolution of this issue, we need not address whether Mr. Wheeler should have been stricken for cause or whether reversible error resulted from the police officer's reference to the results of the portable breathalyzer test.